# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION (CINCINNATI)

BRYON C.,[1]                                      :    Case No. 1:22-cv-00677
                                                  :
      Plaintiff,                           :    Magistrate Judge Caroline H. Gentry
                                                  :    (by full consent of the parties)
vs.                                               :
                                                  :
COMMISSIONER OF THE SOCIAL                        :
SECURITY ADMINISTRATION,                          :
                                                  :
      Defendant.                           :

## DECISION AND ORDER

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income in January 2020. Plaintiff's claims were denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because he was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, this Court REVERSES the Commissioner's decision and REMANDS for further proceedings.

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

## I.  BACKGROUND

Plaintiff asserts that he has been under a disability since January 6, 2020. At that time, he was forty-three years old. Accordingly, Plaintiff was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).[2] Plaintiff has a "high school education and above." *See* 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," Doc. No. 8) and Supplemental Record ("SAR," Doc. No. 15) is summarized in the ALJ's decision ("Decision," Doc. No. 8-2 at PageID 41-63), Plaintiff's Statement of Errors ("SE," Doc. No. 11), the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 16), and Plaintiff's Reply Memorandum ("Reply," Doc. No. 17). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II.  STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

---

[2] The remaining citations will identify only the pertinent Disability Insurance Benefits Regulations, as they are similar in all relevant respects to the corresponding Supplemental Security Income Regulations.

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "[W]hether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the

ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III. FACTS

### A. The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's applications for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

Step 1: Plaintiff has not engaged in substantial gainful activity since January 6, 2020, the alleged onset date.

Step 2: He has the severe impairments of Barrett's esophagus, chronic obstructive pulmonary disease (COPD)/emphysema, degenerative disc disease of the lumbar spine, obesity, arthritis, borderline intellectual functioning, depression, and bipolar disorder.

4

Step 3:      He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:      His residual functional capacity (RFC), or the most he can do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of light work as defined in 20 C.F.R. § 404.1567(b), subject to the following limitations: "[Plaintiff] can occasionally climb ramps, stairs, ladders, ropes, or scaffolds. [Plaintiff] can occasionally stoop and frequently kneel, crouch, or crawl. [Plaintiff] can have no exposure to fumes, odors, dust, gases, or similar pulmonary irritants. [Plaintiff] can have no exposure to hazardous moving machinery or unprotected heights. [Plaintiff] is able to perform simple, routine, repetitive 1-3 step tasks in a work setting without fast pace (no assembly line work)."

He is unable to perform any of his past relevant work.

Step 5:      Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform.

(Decision, Doc. No. 8-2 at PageID 46-57.) These findings led the ALJ to conclude that

Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at

PageID 57.)

## B.      The ALJ's Symptom Severity Analysis

The ALJ summarized Plaintiff's testimony, claimed symptoms, reported daily

activities, and subjective complaints during his medical appointments. (Decision, Doc.

No. 8-2 at PageID 50-54.) The ALJ also explained the applicable legal standard for

evaluating Plaintiff's symptoms. (*Id.* at PageID 51 (citing 20 C.F.R. § 404.1529 and

Social Security Ruling (SSR) 16-3p).) The ALJ found that although Plaintiff's physical

and mental impairments could reasonably be expected to cause some of his symptoms,

his statements about "the intensity, persistence and limiting effects of these symptoms are

5

not entirely consistent with the medical evidence and other evidence in the record." (*Id*. at PageID 50.)

The ALJ further evaluated Plaintiff's subjective complaints later in the RFC analysis. (Decision, Doc. No. 8-2 at PageID 54.) The ALJ concluded that the severity of Plaintiff's alleged symptoms was "not entirely consistent with the evidence." (*Id.*) The ALJ acknowledged Plaintiff's testimony that he was unable to work due to problems with breathing, back pain, and arthritis. (*Id.*) The ALJ compared these complaints to a September 2, 2020 pulmonology treatment note that referenced only "mild COPD" and "likely" benign pulmonary nodules. (*Id.* (citing AR, Doc. No. 8-29 at PageID 1879).) The ALJ cited Plaintiff's February 2020 statement to a provider that he was "still smoking and having ongoing acid reflux." (*Id.* (citing AR, Doc. No. 8-7 at PageID 628).) The ALJ also cited April 2021 x-rays that showed mild multifocal osteoarthritis of the bilateral hands with no evidence of inflammatory arthropathy, no acute osseous abnormality of the shoulders, and progressive multilevel degenerative disc disease and facet arthrosis of the lumbar spine with development of mild rotoscoliosis. (*Id.* (citing AR, Doc. No. 8-9 at PageID 1658-59).) Next, the ALJ stated that Plaintiff "refused to go to the pain clinic because he found it useless and preferred to smoke pot." (*Id.* (citing AR, Doc. No. 8-29 at PageID 1857).) The ALJ concluded: "While I agree [Plaintiff] had severe impairments[,] most of the imaging was consistent with [Plaintiff's] severity being mild-moderate. In addition, the record showed [Plaintiff] was at times noncompliant with his medical providers." (Decision, Doc. No. 8-2 at PageID 54.)

With respect to Plaintiff's mental limitations, the ALJ acknowledged Plaintiff's reports that he was unable to work due to depression and anxiety. (Decision, Doc. No. 8-2 at PageID 54.) But the ALJ reasoned that "the record was rather benign in his mental health treatment." (*Id.*) The ALJ cited a March 2020 primary care progress note and an October 2020 emergency room progress note that documented a normal mood and affect. (*Id.* (citing AR, Doc. No. 8-7 at PageID 624; AR, Doc. No. 8-8 at PageID 1227).) He also cited a September 2020 pulmonology progress note in which Plaintiff "denied having depression or anxiety." (*Id.* (citing AR, Doc. No. 8-29 at PageID 1874).) The ALJ also summarized Plaintiff's mental health treatment by citing Plaintiff's statements to the consultative psychologist: "[Plaintiff] denied ever being treated by a psychologist or psychiatrist in the past, and this [sic] his primary care doctor had prescribed him Buspirone and Escitalopram." (*Id.* (citing AR, Doc. No. 8-7 at PageID 741).)

The ALJ also explained his decision to include certain restrictions in the RFC. (Decision, Doc. No. 8-2 at PageID 55.) The ALJ limited Plaintiff to light exertion with additional postural and environmental limitations "to safeguard [Plaintiff] from activities that might precipitate or aggravate his purported symptoms." (*Id.*) The ALJ imposed task-related restrictions on "the kind of work that [Plaintiff] could have performed, and the setting in which he could have worked" to "accommodate [Plaintiff's] mental impairment and related symptoms." (*Id.*)

## IV.    LAW AND ANALYSIS

Plaintiff asserts that remand is warranted because: 1) "[r]eview of the hearing transcript shows the hearing recording is of poor quality and parts of the recording are

7

missing"; 2) the ALJ failed to properly evaluate Plaintiff's symptom severity pursuant to SSR 16-3p; and 3) the ALJ failed to address the medical opinion of Plaintiff's treating nurse practitioner. (SE, Doc. No. 11 at PageID 1893-1901.)

Plaintiff's first alleged error regarding the poor quality of the hearing transcript has been resolved and so is not well-taken. Plaintiff challenged the quality of the hearing audio and cited to several parts of the transcript that stated "[INAUDIBLE]." (SE, Doc. No. 11 at PageID 1893-94.) However, shortly after Plaintiff filed his Statement of Errors, Defendant filed a Notice to the Court and indicated that it intended to file a supplemental transcript. (Notice, Doc. No. 13 at PageID 1906.) Defendant explained that the Social Security Administration had reviewed the hearing audio and "determined that there were no issues with the audio itself but with its transcription." (*Id.*) Defendant thereafter filed a supplemental record that contained the corrected transcript. (SAR, Doc. No. 15.)

The Court has reviewed the corrected transcript and finds that it addresses all of the issues and gaps in testimony raised by Plaintiff in his Statement of Errors. (*Compare* SE, Doc. No. 11 at PageID 1893-94, *with* SAR, Doc. No. 15-2 at PageID 1960, 1977-78, 1987-1990, 1996-97.) Although the corrected transcript still contains approximately thirty-two "[INAUDIBLE]" notations (*see, e.g.,* SAR, Doc. No. 15 at PageID 1961, 1965-66, 1968, 1971, 1977-79, 1981-82, 1985, 1987-91), these gaps appear to be insignificant. (*Id.*) Also, Plaintiff did not object to the corrected transcript in his Reply Memorandum, and in fact cited to the corrected transcript several times. (Reply, Doc. No. 17 at PageID 2017-19.) For these reasons, the Court finds that the corrected transcript

accurately reflects Plaintiff's testimony and the extent of his claimed symptoms and limitations, and it allows for meaningful judicial review.

Turning to Plaintiff's other alleged errors, the Court finds error in the ALJ's evaluation of Plaintiff's subjective symptoms for the reasons discussed below. The Court therefore does not address Plaintiff's other alleged error and instead instructs the ALJ to address both alleged errors on remand.

### A.      Applicable Law.

The ALJ's evaluation of Plaintiff's symptoms was governed by a detailed Social Security regulation (20 C.F.R. § 404.1529) and Social Security Ruling (SSR) 16-3p, which mandates a two-step process for evaluating an individual's symptoms. SSR 16-3p, 2017 WL 5180304, *3 (revised and republished Oct. 25, 2017). Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1).

At the first step, the ALJ must "determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-3p at *3. The ALJ must base this determination upon objective medical evidence in the form of medical signs or laboratory findings. *Id*. Medical signs are "anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques that can be observed apart from an individual's symptoms." *Id*. The ALJ will not, however, consider whether the objective medical evidence supports the alleged severity of the individual's symptoms. *Id*.

At the second step, the ALJ must "evaluate the intensity and persistence of an individual's symptoms . . . and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." SSR 16-3p at *9. Among other things, the ALJ must decide whether the alleged symptoms and accompanying limitations are consistent with the evidence in the record. SSR 16-3p at *8. The Social Security Administration "recognize[s] that some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence." *Id*. The ALJ must therefore examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*. at *9. Further, when determining whether an individual's statements are consistent with his symptoms, the ALJ will keep in mind that the individual's statements may themselves be inconsistent because "[s]ymptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time." *Id*. at *8-9.

When evaluating the intensity, persistence and limiting effects of the claimant's alleged symptoms, the ALJ must consider the following factors:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

10

4.    The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5.    Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6.    Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7.    Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p at *7-8. The ALJ need only discuss those factors that are pertinent based upon the evidence in the record. *Id*. However, the ALJ's discussion of the applicable factors "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10.

The ALJ will also consider whether the individual sought medical treatment and followed the treatment that was prescribed. SSR 16-3p at *9. Attempts to obtain treatment may show that symptoms are intense and persistent; conversely, a lack of such efforts may show that an individual's symptoms are not intense or persistent. *Id*. Similarly, "if the individual fails to follow prescribed treatment that might improve symptoms, [the ALJ] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." *Id*.

However, the ALJ "will not find an individual's symptoms inconsistent . . . on this basis without considering possible reasons he or she may not comply with treatment or

seek treatment consistent with the degree of his or her complaints." SSR 16-3p at *9. The

SSR explains, for example, that individuals may not seek or follow treatment due to side

effects from medications, an inability to afford treatment, or an inability to understand the

need for treatment due to a mental impairment. *Id.* at *9-10. The ALJ may need to

contact the claimant—or to question the claimant at the administrative hearing—to

ascertain the reason(s) for the lack of treatment. *Id.* at *9. The ALJ "***will*** explain how [he

or she] considered the individual's reasons" in the evaluation of the individual's

symptoms. *Id.* at *10 (emphasis added); *cf. Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x

113, 119 (6th Cir. 2016) (the ALJ must consider the reasons for not obtaining treatment

"before drawing an adverse inference from the claimant's lack of medical treatment.").

## B. The ALJ Reversibly Erred When Evaluating Plaintiff's Symptom Severity.

The ALJ erred when analyzing Plaintiff's symptom severity in several respects, as

explained below. Because the ALJ's conclusions are unsupported by substantial evidence

and he did not comply with the requirements of SSR 16-3p, reversal is required.

### 1. The ALJ's conclusions regarding Plaintiff's symptom severity are unsupported by substantial evidence.

The ALJ discounted Plaintiff's symptom severity, in part, because he concluded

that Plaintiff's allegations were "not entirely consistent with the medical evidence."

(Decision, Doc. No. 8-2 at PageID 54.) In making this conclusion, the ALJ only cited to

the following evidence:

- A September 2, 2020 pulmonology progress note that the ALJ said referenced only "mild COPD" and "likely benign" pulmonary nodules;

- April 2021 x-rays that showed mild multifocal osteoarthritis of the bilateral hands with no evidence of inflammatory arthropathy;

- April 2021 x-rays that showed no acute osseous abnormality of the shoulders; and

- April 2021 lumbar spine x-rays that showed "progressive multilevel lumbar degenerative disc disease and facet arthrosis with development of mild rotoscoliosis."

(*Id.*)

The ALJ's summary of this selected objective medical evidence was incorrect. Contrary to the ALJ's statement that the September 2, 2020 progress note referenced only "mild" COPD, Plaintiff's pulmonologist actually noted "[m]ild-***mod*** COPD." (*Compare* Decision, Doc. No. 8-2 at PageID 54, *with* AR, Doc. No. 8-29 at PageID 1879 (emphasis added).) The most recent imaging that the pulmonologist had reviewed—which is cited on the previous page of the note—refers to "***moderate*** upper lung zone predominant emphysema, left greater than right." (*Id.* at PageID 1878.) And although the ALJ stated that the April 2021 lumbar spine x-rays showed "facet arthrosis," he failed to acknowledge that the report showed "moderate to severe" lower lumbar facet arthrosis. (*Compare* Decision, Doc. No. 8-2 at PageID 54, *with* AR, Doc. No. 8-9 at PageID 1659.)

The ALJ cited no additional examples of objective medical evidence to support his conclusion that Plaintiff's physical complaints were not entirely consistent with the evidence in the record. (Decision, Doc. No. 8-2 at PageID 54.) The ALJ did provide a detailed summary of the medical evidence related to Plaintiff's physical impairments

13

earlier in the RFC analysis. (*Id.* at PageID 50-53.) But the ALJ only considered the evidence cited above when evaluating the consistency of Plaintiff's physical complaints with other evidence in the record. (*Id.* at PageID 55.)

In so doing, the ALJ ignored evidence that was consistent with Plaintiff's physical complaints. The ALJ did not consider, for example, a September 2020 spirometry report that showed ***moderately severe*** restrictive pulmonary disease. (AR, Doc. No. 8-7 at PageID 749, 762.) And although the ALJ stated that the April 2021 bilateral hand x-rays showed no evidence of inflammatory arthropathy, the ALJ ignored an ultrasound that was taken a few months later in July 2021, which showed findings of synovitis with synovial hypertrophy in the bilateral fingers and left wrist that suggested inflammatory arthritis. (AR, Doc. No. 8-29 at PageID 1840.)

The ALJ likewise cited to—and incorrectly characterized—minimal evidence to support his conclusion that Plaintiff's mental health allegations were not entirely consistent with the evidence of record. The ALJ cited just two examinations where Plaintiff's providers observed that he exhibited a normal mood and affect. (Decision, Doc. No. 8-2 at PageID 54 (citing AR, Doc. No. 8-7 at PageID 624; AR, Doc. No. 8-8 at PageID 1227).) The ALJ subsequently cited to a singular pulmonology treatment note from September 2020 and stated: "Then [Plaintiff] denied having depression or anxiety." (AR, Doc. No. 8-2 at PageID 54.) However, Plaintiff's pulmonologist actually indicated in the "Review of Systems" section of that treatment note that although Plaintiff denied depression, he did in fact report anxiety: "No depression, ***+ anxiety***." (AR, Doc. No. 8-29 at PageID 1874 (emphasis added).)

The ALJ similarly ignored evidence that was consistent with Plaintiff's mental complaints. The ALJ did summarize the evidence related to Plaintiff's mental impairments in the "Mental Health Evidence" section of the RFC analysis. (Decision, Doc. No. 8-2 at PageID 53-54.) But when analyzing Plaintiff's subjective mental complaints, the ALJ ignored numerous treatment notes where Plaintiff reported a depressed mood, anxiety, excessive worry, irritability, nervous behavior, panic, and/or restlessness. (AR, Doc. No. 8-7 at PageID 741, 967, 988, 1002, 1045, 1072, 1085, 1106-07; AR, Doc. No. 8-8 at PageID 1633; AR, Doc. No. 8-18 at PageID 1738; AR, Doc. No. 8-21 at PageID 1753; AR, Doc. No. 8-23 at PageID 1765-67; AR, Doc. No. 8-26 at PageID 1779-80; AR, Doc. No. 8-29 at PageID 1867.) The ALJ also ignored several examinations that showed findings such as depressed or anxious moods, as well as rapid and pressured speech. (AR, Doc. No. 8-7 at PageID 632, 742, 968, 988, 1108; AR, Doc. No. 8-8 at PageID 1374.)

The ALJ's failure to acknowledge significant evidence that supports Plaintiff's subjective complaints, combined with his mischaracterization of the evidence that he chose to cite, signifies an impermissibly selective review of the record. *See Gentry*, 741 F.3d at 723-23 (citing *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 435 (6th Cir. 2013) (reversing where the ALJ "cherry-picked select portions of the record" rather than doing a proper analysis); *Germany–Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (finding error where the ALJ was "selective in parsing the various medical reports")). The Court recognizes that the ALJ is not required to directly address every piece of evidence and finding in the record. *See Smith-Johnson v. Comm'r of Soc.*

15

*Sec.*, 579 F. App'x 426, 437 n.11 (6th Cir. 2014). Nevertheless, the ALJ's "factual findings as a whole must show that he implicitly resolved" any conflicts in the evidence. *Id.* Here, because the ALJ impermissibly (and incorrectly) cherry-picked the record, reversal is required.

### 2. The ALJ did not comply with SSR 16-3p.

The ALJ's failure to comply with SSR 16-3p is another error requiring reversal. As noted above, the ALJ discounted Plaintiff's subjective physical complaints because Plaintiff was allegedly "at times noncompliant with his medical providers." (Decision, Doc. No. 8-2 at PageID 54.) The ALJ also discounted Plaintiff's subjective mental complaints because "the record was rather benign in his mental health treatment." (*Id.*) However the ALJ did not consider or develop the record regarding possible reasons for Plaintiff's noncompliance and "rather benign" treatment, as he was required to do.

As an initial matter, the Court must ascertain the evidence on which the ALJ relied to reach these conclusions. As Plaintiff points out, the ALJ cited no records to support his conclusion that Plaintiff was "at times noncompliant with his medical providers." (SE, Doc. No 11 at PageID 1896-97 (citing Decision, Doc. No. 8-2 at PageID 54).) But the ALJ did describe examples of alleged noncompliance elsewhere in the decision. The ALJ stated that during his hearing testimony, Plaintiff "did admit to smoking cigarettes despite his medical providers recommending he stop." (Decision, Doc. No. 8-2 at PageID 50.) The ALJ cited to Plaintiff's February 2020 report that he was still smoking despite the fact that his provider "spoke with him in-depth about smoking with a history of Barrett's [esophagus]." (*Id.* at PageID 51.) The ALJ cited a July 2021 rheumatology progress note

16

that stated Plaintiff "had been agitated during video visits and he was upset that the medical providers asked him to do physical therapy (Exhibit B18F p.40). [Plaintiff] also refused to go to the pain clinic because he found it useless and preferred to smoke marijuana (Id.)." (*Id.* at PageID 53.) The Court will presume that the ALJ relied on these records to discount Plaintiff's subjective symptoms.

The ALJ did not, however, analyze ***why*** Plaintiff did not comply with treatment recommendations. The ALJ was required to "consider[] possible reasons [Plaintiff] may not comply with treatment" before relying on a lack of treatment to conclude that his symptoms were inconsistent with the evidence in the record. SSR 16-3p, 2017 WL 5180304, at *9-10. Here, Plaintiff acknowledged at the hearing that he had been smoking more since the COVID-19 pandemic started. (AR, Doc. No. 15-2 at PageID 1976.) But Plaintiff attributed this behavior to increased anxiety caused by having to stop working, the COVID-19 lockdown, lack of income, and not knowing "where we were gonna wind up." (*Id.*) Plaintiff said that smoking "became a crutch that I [did not] want, but just happened to be so." (*Id.*)

As for the ALJ's statement that Plaintiff was "upset that he was asked to do [physical therapy]" and "refuses [the] pain clinic" (AR, Doc. No. 8-29 at PageID 1857), the medical records show that Plaintiff did attend a pain management consultation in December 2020. (AR, Doc. No. 8-8 at PageID 1630.) Plaintiff stated that he had been using medical marijuana, because it helped his pain. (*Id.*) The pain management physician started Plaintiff on Gabapentin and Celebrex, referred him to physical therapy, and recommended lumbar epidural steroid injections and bilateral shoulder injections,

17

although the provider stated that Plaintiff would need to complete physical therapy prior to getting approval for the injections. (*Id.* at PageID 1639.)

Significantly, when questioned by his attorney at the hearing, Plaintiff testified that although his pain management physician recommended physical therapy, his rheumatologist had advised him to first treat the pain and swelling associated with his autoimmune condition. (SAR, Doc. No. 15-2 at PageID 1980-81.) Plaintiff also said that he was not currently taking medication for the autoimmune condition because his providers wanted to treat his tuberculosis first. (*Id.* at PageID 1983.) Records from Plaintiff's rheumatologist confirm Plaintiff's testimony that she planned to start Plaintiff on rheumatoid arthritis medications only after he received treatment for tuberculosis. (*See* AR, Doc. No. 8-29 at PageID 1838.)

The ALJ wrongly ignored these explanations when he concluded that Plaintiff was noncompliant with treatment recommendations. (Decision, Doc. No. 8-2 at PageID 54.) Nor did the ALJ develop the record regarding possible reasons for Plaintiff's noncompliance, as SSR 16-3p required him to do. During the hearing, for example, the ALJ did not ask any questions about whether Plaintiff had followed up with treatment recommendations for physical therapy or pain management, and if not, then why not. (*See* SAR, Doc. No. 15-2 at PageID 1991.)

Similarly, the ALJ did not consider possible reasons that Plaintiff failed to seek treatment consistent with the degree of his mental health complaints. In response to questions from his attorney about his treatment for depression and anxiety, Plaintiff stated that he was taking medications for these conditions, and had been on a waiting list

18

to see a therapist "for months." (SAR, Doc. No. 15-2 at PageID 1985.) But although Plaintiff's statement could provide a reasonable explanation for his limited mental health treatment history, the ALJ did not consider it when he evaluated Plaintiff's subjective complaints. (Decision, Doc. No. 8-2 at PageID 54.) The ALJ also failed to develop the record when characterizing Plaintiff's mental health treatment as inconsistent with his complaints. For example, the ALJ did not ask questions about whether Plaintiff did not seek treatment consistent with the degree of the mental complaints alleged, and if not, then why not. (*See* SAR, Doc. No. 15-2 at PageID 1991.)

For these reasons, the Court concludes that the ALJ did not comply with SSR 16-3p. This failure constitutes reversible error and provides another reason why the case should be remanded.

## V.    THE ALJ'S ERRORS WERE NOT HARMLESS

The ALJ's errors can only be excused as harmless if they do not prejudice the claimant on the merits or deprive him of substantial rights. *Rabbers*, 582 F.3d at 654. The Court finds that the ALJ's errors were not harmless because they prejudiced Plaintiff on the merits. Therefore, reversal is required.

## VI.    REMAND

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041

(6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. *Faucher*, 17 F.3d at 176. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above. On remand, the ALJ should further develop the record as necessary, particularly as to Plaintiff's subjective complaints and treatment history, and evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law. The ALJ should evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. No. 11) is GRANTED;

2. The Court REVERSES the Commissioner's non-disability determination;

3. No finding is made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4. This matter is REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Order; and

5. This case is terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge
